This matter comes before me on an order to show cause why the defendant should not be enjoined and restrained from entering into a proposed agreement with the Reconstruction Finance Corporation and also why a master should not be appointed to investigate the affairs and transactions of the defendant and in the meantime why a receiver should not be appointed.
The complainant is the holder of two hundred shares of preferred stock of the defendant corporation. He owns a little more than five per cent. of the preferred stock and less than six-tenths per cent. of the entire capital stock of the company. Both the preferred and common stock have voting powers.
The company is engaged in the printing and dyeing business with plants in Canada, Allentown, Williamsport, East Paterson and Virginia. It owns seven plants in all. The company is one of the leaders in the industry. It was organized in 1908 and during the period of thirty years it paid out over $10,000,000 in dividends and retired $2,300,000 of preferred stock. It employs between fifteen hundred and two thousand persons.
It appears from the affidavits that the defendant began to lose money in the year 1931. The affidavit of the president shows a loss of about $65,000 in 1931; about $41,000 in 1932. During 1933 and 1934 the company showed a profit of about $155,000 and $220,000, respectively. A loss is reflected by the statement in 1935 of $110,000. A small profit of about $20,000 appears for 1936 and a loss of $168,000 and $266,000 *Page 388 
for the years 1937 and 1938. A loss of some $57,000 appears for the first three months of 1939. The plants and equipment of the defendant have been maintained in good condition.
The total losses during the period from 1931 to date, without deducting depreciation, amount to about $300,000. The company erected a new plant in Virginia at a cost of $400,000 and spent about $300,000 on plant improvements. During the depression the company became somewhat financially embarrassed and was obliged to borrow money from the New Jersey Realty and Security Company. Mr. Auger, who was the president of the company, pledged his personal security in order to obtain this loan which is still outstanding. The larger part of the preferred and common stock is held by officers of the company. The business of the company has been hampered by strikes and labor conditions and competition has been so great that it has not been able to show much of a profit and at times has sustained a loss. Complainant claims $3,500,000 in assets. The company owes about $215,000 for taxes. Because of its present condition it has applied to the Reconstruction Finance Corporation for a loan of $700,000.
The Reconstruction Finance Corporation has made an investigation of its assets and earning capacity and as a result has signified its willingness to make the said loan to the defendant. The money so loaned is to be used for the following purposes: $215,000 for delinquent taxes; $250,000 for the payment of accounts payable; $100,000 for the purchase of new machinery and equipment and the balance for operating expenses.
A meeting of the stockholders was held on August 15th last, pursuant to notice, to act upon the granting of the loan under the terms proposed by the Reconstruction Finance Corporation. Ninety-one per cent. of the common stockholders and seventy-nine per cent. of the preferred stockholders voted in favor of accepting the loan. The complainant was the only stockholder voting against the same.
Defendant claims that the complainant is without legal authority to proceed in this case because he does not hold at least ten per cent. of the stock of the defendant corporation *Page 389 
as provided by R.S. 1937, 14:14-3. In answer to this argument complainant cites the case of United Railway and Canal Co. v.Weldon, 47 N.J. Law 59. In the Weldon Case the charters of the companies involved were granted by special acts of the legislature before the adoption of the General Corporation act of 1896. The charters of these companies could not be repealed by the legislature. This case, therefore, does not apply to the present situation. The defendant company was organized under the General Corporation act of 1896 and the supplements and amendments thereof as appeared in 1908, the date of incorporation. There are a number of cases in this state which hold that amendments of the act of 1896 apply to corporations already in existence and incorporated thereunder. See Bingham
v. Savings Investment and Trust Co., 102 N.J. Eq. 302; Rocker
v. Cardinal Building and Loan Association, 13 N.J. Mis. R. 397;179 Atl. Rep. 667; affirmed (Court of Errors and Appeals),119 N.J. Law 134. These cases hold that the legislature may change the procedure affecting a corporation incorporated under the act of 1896. The legislature by the act of 1931, above referred to (R.S. 1937, 14:14-3), changed the procedure which must be followed by a stockholder and fixed the minimum amount of stock which that stockholder must own to enable him to apply to the court of chancery for the appointment of a receiver.
No fraud appears in the case nor is fraud seriously urged by the complainant.
Complainant argues that if he cannot proceed as a stockholder for the appointment of a receiver for the purpose of liquidating the defendant corporation, he is entitled to have a custodial receiver appointed under the general equity powers of this court. There is no prayer for such relief. Assuming, however, that there is such a request the bill might be multifarious. See Long v.F.R. Long Co., 82 N.J. Eq. 544; Pierce v. Old Dominion CopperMining and Smelting Co., 67 N.J. Eq. 399; Bull v. InternationalPower Co., 84 N.J. Eq. 6; affirmed, 85 N.J. Eq. 206. It does not appear in this case that the corporation has suspended its business or that it is being conducted at such a loss as would prejudice the interest of its creditors or stockholders provided the loan *Page 390 
from the Reconstruction Finance Corporation can be obtained. Assuming the complainant is entitled to apply for the relief asked the appointment of a receiver is within the discretion of the court. The question of appointment of a custodial receiver should be approached with great caution and when there is doubt as to its benefits the appointment should be refused. It is unwise to interfere with the operations of a corporation when such corporation is acting with an honest purpose unless its condition is such as to jeopardize the interests of the stockholders, creditors or the public.
It does not seem that now when the corporation has an opportunity to borrow money with which to continue its operations and the Reconstruction Finance Corporation, after investigation, is willing to advance the same it should be deprived of such an opportunity to rehabilitate itself. The taxes and debts of the corporation, for the payment of which part of the loan is to be used, are prior liens to that of the complainant. This court will not question the acts of the stockholders of the corporation and the acts of its directors if the same are within the powers conferred upon the corporation and in furtherance of its purposes provided the same are not unlawful.
Complainant argues that the agreement proposed to be entered into between the Reconstruction Finance Corporation is ultravires as far as this defendant is concerned. There is nothing before me which would indicate that the agreement is ultravires. To be sure it pledges some of the assets of the corporation as security for the loan and provides that the business shall be conducted in a manner satisfactory to the Reconstruction Finance Corporation. This does not necessarily mean that the directors of the corporation are surrendering their rights to conduct the business of the corporation. No form of proposed agreement has been submitted to me and I cannot anticipate that the same will be in violation of law.
I have, therefore, reached the conclusion that the restraint relative to the proposed agreement with the Reconstruction Finance Corporation at this time should be refused. I have also concluded, after considering all the facts before me, that no receiver should be appointed. *Page 391